UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

PrimeVest Financial Services, Inc.,                    Civil No. 05-1312 (PAM/RLE)

                Plaintiff,

v.                                                     **MEMORANDUM AND ORDER**

J. Ryan Ruxer and Linsco/Private
Ledger Corp.,

                Defendants.

---

This matter is before the Court on Plaintiff's Motion for a Temporary Restraining Order. All parties were present at the hearing and therefore the Court will consider the Motion as one for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. For the reasons that follow, the Motion is denied.

**BACKGROUND**

Plaintiff PrimeVest Financial Services, Inc. sells securities and insurance products through registered representatives and licensed agents. Defendant J. Ryan Ruxer is a registered representative in the securities industry. From early 2002 to June 23, 2005, he worked at the PrimeVest Service Center located in the German American Bank in Jasper, Indiana. During his employment, Ruxer provided investment and insurance services to PrimeVest customers in the Jasper area.

Ruxer entered into a Dual Employment and Non-competition Agreement ("Agreement") with PrimeVest and German American Bank in April 2002. (July 1, 2005 Olson Aff. Ex. A.) The Agreement prohibits Ruxer from associating with a PrimeVest competitor during his employment and for one year following the termination of his employment. (Id. ¶ 22.) It also

prohibits Ruxer from engaging in "the business of buying, selling, trading, or dealing in securities, commodities, insurance products, or in any type of investment product available through PrimeVest . . . within [the] geographical area served by the Service Center" for one year following the termination of Ruxer's employment. (Id.) In addition, the Agreement prohibits the solicitation of PrimeVest's customers for the same time frame. (Id. ¶¶ 22-23.) Finally, the Agreement prohibits the removal of PrimeVest records from its Service Center and requires that Ruxer surrender all PrimeVest property upon his termination of employment. (Id. ¶¶ 20-21.)

Ruxer maintains that the Agreement was sprung on him and that no one informed him that he would be required to sign such an agreement before he began working at German American Bank. (Ruxer Aff. ¶¶ 8-9, 11.) He further contends that he received no consideration for signing it. (Id. ¶ 15.) In addition, he maintains that he felt compelled to sign the Agreement because he had left his previous employment in Indianapolis, Indiana and had no other meaningful employment options. (Id. ¶ 16.)

Ruxer resigned his employment with German American Bank on June 23, 2005. Within a couple of days, he started Ruxer Financial Services and became affiliated with Defendant Linsco/Private Ledger Corporation. ("LPL"). LPL is a brokerage firm and therefore a competitor of PrimeVest.[1]

---

[1] PrimeVest and LPL are members of the National Association of Securities Dealers ("NASD"), and Ruxer is a registered agent of the NASD. In addition, the Agreement provides that any dispute between the parties shall be settled before NASD arbitrators. (July 1, 2005, Olson Aff. Ex. A ¶¶ 31-32.) However, NASD Rule 10335 provides that a party may seek a temporary restraining order from a court of competent jurisdiction provided that the arbitration hearing on a request for permanent injunctive relief has not yet begun. Accordingly, the Court has jurisdiction to hear this matter.

On June 30, 2005, PrimeVest commenced an action alleging six causes of action against Defendants: (1) breach of contract; (2) tortious interference with contractual relations; (3) violation of Securities and Exchange Commission Regulation S-P, 17 C.F.R. §§ 248.1-248.30; (4) misappropriation of trade secrets; (5) conversion; and (6) breach of fiduciary duties. Specifically, PrimeVest alleges that Ruxer associated with LPL before his June 2005 resignation. Indeed, Ruxer prepared to compete with PrimeVest while still employed by German American Bank and used PrimeVest property to do so. In particular, Ruxer used PrimeVest property to fax a letter to LPL, wherein he requested a start-up loan so he could "continue to service clients, process account transfers, and get assets in place to resume producing." (July 1, 2005, Olson Aff. Ex. D.) Ruxer also formed his corporation, Ruxer Financial Services, with the Indiana Secretary of State before he resigned. Ruxer does not deny any of this.

PrimeVest also claims that Ruxer removed customer information from its Service Center and mailed announcements about his new association with LPL immediately after his June 2005 resignation. In addition, PrimeVest maintains that Ruxer removed PrimeVest property, including referral forms and a notebook containing confidential information about PrimeVest's customers, and has used that information to solicit customers. Ruxer denies taking any PrimeVest property and claims that he does not possess anything that belongs to PrimeVest. He also contends that the only customers he contacted about his new business were relatives and friends whose relationships predate his relationship with PrimeVest. He maintains that he compiled his own customer list based on memory.

On July 1, 2005, PrimeVest filed the instant Motion, wherein it seeks to prohibit Defendants from soliciting any PrimeVest customer with whom Ruxer dealt during his employment with German American Bank and PrimeVest. PrimeVest also seeks an order that Defendants return of all PrimeVest property in their possession.

**DISCUSSION**

When determining whether to grant preliminary injunctive relief, the Court evaluates the following factors: (1) the likelihood that the movant will succeed on the merits, (2) the threat of irreparable harm to the movant absent the injunction, (3) the balance between that harm and the harm that the relief would cause the other litigants, and (4) the public interest. Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981). A preliminary injunction is an extraordinary remedy, and the party seeking injunctive relief bears the burden of proving all of the factors. Watkins, Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003).

**A.     Likelihood of Success on the Merits**

PrimeVest moves for a preliminary injunction on the grounds that Ruxer has breached three provisions of the Agreement: the non-solicitation covenant, the promise not to remove PrimeVest records from the Service Center, and the covenant to return all PrimeVest property upon termination of employment. Ruxer counters that the Agreement is invalid and therefore PrimeVest cannot succeed on this claim.

The Agreement is governed by Minnesota law. In Minnesota, courts generally disfavor non-competition agreements and scrutinize them carefully because they are agreements in partial restraint of trade. Benfield, Inc. v. Moline, 351 F. Supp. 2d 911, 917 (D. Minn. 2004) (Davis, J.) (citations omitted). To be valid, the agreement must be reasonable in scope and

4

enforceable. Universal Hosp. Servs., Inc. v. Hennessy, No. 01-2072, 2002 WL 192564, at *2 (D. Minn. Jan. 23, 2002) (Magnuson, J.).

Non-competition agreements are enforceable if they serve a legitimate employer interest and are reasonably tailored to protect that interest. See Kallock v. Medtronic, Inc., 573 N.W.2d 356, 361 (Minn. 1998). Employers have a legitimate interest in protecting themselves against unfair competition by former employees. Moreover, employers have a legitimate interest in protecting confidential information and goodwill that flows from client relationships. Roth v. Gamble-Skogmo, Inc., 532 F. Supp. 1029, 1031 (D. Minn.1982) (MacLaughlin, J.); see also Metro Networks Communications v. Zavodnick, No. 03-6198, 2003 WL 22959680, at *3 (D. Minn. Dec. 12, 2003) (Kyle, J.). Thus, courts generally hold that a restriction limited to preventing solicitation of prior clients is reasonable to protect the employer's business. Benfield, Inc., 351 F. Supp. 2d at 917 (citation omitted). Likewise, courts find that the use of geographic limits based upon a former employee's sales area and employment restrictions limited to one year are reasonable. Metro Networks Communications, 2003 WL 22959680, at *3.

A non-competition agreement entered into at the inception of the employment relationship does not require independent consideration to be valid and enforceable. Nat'l Recruiters v. Cashman, 323 N.W.2d 736, 740 (Minn. 1982). However, a non-competition agreement signed after employment commences is presumed unenforceable unless it is clearly ancillary to the employment agreement or supported by adequate additional consideration. Id.; see also Sanborn Mfg. Co. v. Currie, 500 N.W.2d 161, 164 (Minn. Ct. App. 1993) (additional consideration is required because when the employer fails to inform prospective employees

CASE 0:05-cv-01312-PAM-RLE   Document 16   Filed 07/06/05   Page 6 of 8

of non-competition agreements until after they have accepted jobs, the employer takes undue advantage of the inequality between parties).  Continued employment may constitute independent consideration "if the agreement is bargained for and provides the employee with 'real advantages.'"  Midwest Sports Mktg., Inc. v. Hillerich & Bradsby of Canada, Ltd., 552 N.W.2d 254, 265 (Minn. Ct. App. 1996) (citation omitted).

Ruxer submits that he knew nothing about the Agreement before beginning his employment with German American Bank in March 2002.  He maintains that PrimeVest presented him with the Agreement in April 2002 allegedly on a "take-in-or-leave-it" basis, and provided no additional consideration in exchange for executing the Agreement.  He further claims he felt compelled to sign the Agreement because he had already quit his previous job and moved to a new geographic locale.

PrimeVest bears the burden of proving that the Agreement is valid.  At this stage, it has not met its burden because it has not refuted Ruxer's assertion that he began working at the PrimeVest Service Center before PrimeVest asked him to sign the Agreement.  Accordingly, PrimeVest has not shown a likelihood of success on the merits of its claim.  See Cannon Servs. v. Culhane, No. 04-1597, 2004 WL 950414, at *3 (D. Minn. Apr. 30, 2004) (Montgomery, J.) (denying preliminary injunction because the parties disputed whether plaintiff was aware of non-competition agreement before accepting employment and whether the non-competition was supported by adequate consideration); Inter-Tel, Inc. v. CA Communications, Inc., No. 02-1864, 2002 WL 1949748, at *2 (D. Minn. July 31, 2002) (Magnuson, J.) (denying a temporary restraining order because plaintiff failed to show that non-competition was enforceable);

6

Universal Hosp. Servs., Inc. v. Henderson, No. 02-951, 2002 WL 1023147, at * 3 (D. Minn. May 20, 2002) (Kyle, J.) (same).

Similarly, the controverted and uncertain nature of the evidence regarding Ruxer's confiscation and use of PrimeVest property militates against an early determination of the likelihood of PrimeVest's success on its claim. Alhough PrimeVest has averred that Ruxer must have retained PrimeVest property after his resignation, Ruxer has declared under penalty of perjury that he does not possess and will not use any PrimeVest property or client information.

**B.      Irreparable Harm**

Irreparable harm may be inferred from the breach of a valid restrictive covenant. Metro Networks Communications, 2003 WL 22959680, at *7. The Court therefore recognizes that PrimeVest may suffer irreparable harm in the form of lost goodwill, reputation, and client relationships. Moreover, if Ruxer does indeed hold confidential information about PrimeVest's customers, the Court further recognizes that Ruxer retaining and sharing the information may expose PrimeVest to Securities and Exchange Commission enforcement actions. However, because PrimeVest has not shown that the Agreement was valid, the Court cannot infer that PrimeVest will suffer irreparable harm from Ruxer's alleged breach of the Agreement.

**C.      Balance of Harms**

Because PrimeVest has failed to show irreparable harm, the Court likewise finds that PrimeVest has failed to show that the balance of harms weighs in its favor. Indeed, if the Court

grants the preliminary injunction, Ruxer would be prohibited from engaging in activities that he would otherwise be free to do — but for the Agreement.

**D.     Public Policy**

Public interest favors ensuring that employees honor their obligations to their employers. Eaton Corp. v. Giere, 971 F.2d 136, 141 (8th Cir. 1992). In addition, public policy favors the enforcement of a non-competition agreement when it protects the employer from the "deflection of trade or customers" by the former employee. Overholt Crop Ins. Serv. Co. v. Bredeson, 437 N.W.2d 698, 703 (Minn. Ct. App. 1989). However, because PrimeVest has failed to show that the Agreement is enforceable, it has failed to show that this factor weighs in its favor.

**CONCLUSION**

PrimeVest has failed to establish that the Dataphase factors weigh in favor of awarding preliminary injunctive relief. Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's Motion for a Temporary Restraining Order (Clerk Doc. No. 5) is **DENIED**.

Dated: July 6, 2005

                                    s/ Paul A. Magnuson
                                    Paul A. Magnuson
                                    United States District Court Judge